Luther SHAMLIN *v.* STATE of Arkansas

CA CR 86-166                           718 S.W.2d 462

Court of Appeals of Arkansas
En Banc
Opinion delivered October 29, 1986

*John Wesley Hall, Jr.*, for petitioner.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for respondent.

PER CURIAM. Luther Shamlin was convicted of arson and of conspiring with John I. Purtle and/or Linda Nooner to commit theft by deception in an amount exceeding $2500.00, growing out of alleged arsons of a car and a home for the purpose of collecting on fire insurance policies.

Petitioner perfected an appeal which is presently pending in this court. Purtle was subsequently acquitted of the alleged

conspiracy in a trial in which the testimony of some of the witnesses differed in some respects from that given in Shamlin's trial. Shamlin has filed a petition in the Court of Appeals requesting that we reinvest the trial court with jurisdiction and permission to entertain his petition for writ of error *coram nobis*. The petition is filed in this court because the trial court lost jurisdiction when the record was lodged here, and the court in which the conviction was obtained is the proper court to entertain a petition for a writ of error *coram nobis*.

■ When such a petition is directed to the appellate court, the burden on the petitioner is less than that imposed on him in the trial court where the merits of the petition are to be determined.

## THE ROLE OF THE TRIAL COURT

■ In the trial court the writ is granted only when it is convincingly shown that there is an error of fact *extrinsic to the record* (such as insanity at the time of trial, a coerced plea of guilty, or material evidence withheld by the prosecutor) which would have prevented the rendition of the judgment had it been known to the court. *Penn* v. *State*, 282 Ark. 571, 670 S.W.2d 426 (1984). The rule stated in *Troglin* v. *State*, 257 Ark. 644, 519 S.W.2d 740 (1975), is as follows:

> (1) The function of the writ of *coram nobis* is to secure relief from a judgment rendered while there existed some fact which would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment;

> (2) *Coram nobis* proceedings are attended by a strong presumption that the judgment of conviction is valid. The court is not required to accept at face value the allegations of the petition;

> (3) Due diligence is required in making application for relief, and, in the absence of a valid excuse for delay, the petition will be denied; and

> (4) The mere naked allegation that a constitutional right has been invaded will not suffice. The application should make a full disclosure of specific facts relied upon and not

merely state conclusions as to the nature of such facts.

257 Ark. at 645-646, 519 S.W.2d at 741.

█ It is not the function of such a writ to review the evidence presented at the trial or determine that it was improperly admitted. *Coram nobis* does not lie to review an issue of fact or to contradict an adjudicated issue. *Gross* v. *State,* 242 Ark. 142, 412 S.W.2d 279 (1967). Nor is newly discovered evidence a proper basis for the issuance of the writ except in the narrow circumstance recognized by the supreme court in *Penn* v. *State, supra,* (newly discovered confession of a third party that he, not the petitioner, had committed the crime).

## THE ROLE OF THE APPELLATE COURT

█ In *Jenkins* v. *State,* 223 Ark. 245, 265 S.W.2d 512 (1954), the burden of one seeking permission from an appellate court to present the writ to the trial court was defined as follows:

> An application made to the appellate court for permission to proceed in the lower court should make a full disclosure of the specific facts relied on and not merely the conclusions of the party as to the nature and effect of such acts. In the exercise of its discretion as to whether the petition for leave should be granted the court should look to the reasonableness of the allegations of the petition and to the existence of the *probability* of the truth thereof, and grant leave only when it appears the proposed attack on the judgment is meritorious.

223 Ark. at 246, 265 S.W.2d at 513 (quoting 24 C.J.S. *Criminal Law* § 1606 (21) (1961) (emphasis added).

*Jenkins* also indicates that the allegation of those facts which the petitioner believes would lead to a different result should be supported by affidavit or other documentation. Here we are supplied only with portions of the record in the two separate trials of the alleged co-conspirators without affidavits or other documentation.

## POINT I

Petitioner's Point I involves an exhibit and testimony received in his trial which he contends were shown in the Purtle trial

to have been withheld in violation of the discovery rules.

In petitioner's trial, an insurance adjuster introduced as a business record an inventory said to have been made after the fire at Nooner's home. Listed on the document were appliances which were claimed to have been destroyed in the fire and the time, place, and price of their purchase. He stated that the inventory was based on information furnished by Nooner.

In Purtle's subsequent trial, it was brought out on cross-examination that at the time the adjuster met with Nooner he only listed the items which she claimed had been destroyed in the fire. The adjuster stated that the documentation of the time, place, and price at which they were purchased was furnished at a later date and not inserted on the exhibit until immediately before petitioner's trial. The trial court ruled that, as the entries of value had not been made close in point of time to the events described, the document had lost its status as a business entry, at least to the extent of the recitation of value. The adjuster then introduced the document showing only the entries made at the time of the first interview and testified without objection to the items' values from the documents furnished him by Nooner. From the record it appears that only the copy of this instrument showing the list of destroyed appliances had been furnished to the prosecutor and released to petitioner on discovery.

There is no evidence that the prosecutor was any more aware of the sequence of these events than petitioner's counsel. Both had a copy of the instrument released on discovery and the opportunity to examine the exhibit introduced by the witness, but neither discovered the difference. It was not alleged or shown that the information contained on the admitted document was false, or known to have been false and willfully withheld. To the contrary, this information was presented to the jury at Purtle's trial from receipts and documents furnished the adjuster by Nooner. This does not establish a fact which, if known, would have prevented petitioner's conviction. It simply would establish a fact which, if known, would have at best required a different order of proof which was readily available at both trials.

## POINT II

At petitioner's trial, Richard Walls, an insurance investiga-

tor with expertise in arson, testified that he made an examination of the car after the fire. From his examination he determined that the fire was of incendiary origin and that this opinion was confirmed by a chemical analysis of residue taken from the vehicle to a chemical laboratory. His written report of his observations and actions was then introduced into evidence.

In Purtle's trial, the same witness testified that after examining the vehicle he determined from the physical evidence that the heat generated by the fire was of such intensity that it could only have been reached by use of an accelerant. He stated that he had taken samples from the car for chemical analysis in order to confirm his opinion and that the analysis had so confirmed it. He testified on cross-examination, however, that he dictated his report on August 1st, but that the chemical analysis report was not dated until August 9th. It is not alleged or shown that the information contained in the report introduced in petitioner's trial was false or known to have been false and fraudulently presented. To the contrary, despite the discrepancy in the date on which the witness said he dictated the report, the report contained a verbatim recitation from the chemical analysis report he referred to and which was also in evidence.

Petitioner contends that "because this evidence adverse to the witness' credibility was exculpatory in nature the state had a duty to disclose it to the petitioner." Again there is nothing in the record to indicate that the State was any more aware of the discrepancies in the dates than was petitioner's counsel. Apparently the document had been furnished on discovery and the discrepancy was not discovered by the prosecution or the defense at petitioner's trial. The petitioner argues that had the State discovered the discrepancy and disclosed it to them, they might have successfully attacked the credibility of the witness by showing that "he relied in his report on an analysis which had not yet been made." The witness may have offered any one of a number of satisfactory explanations as to why he testified that he had dictated it on August 1st and fully rehabilitated himself. Furthermore, the failure to discover it in time to attempt impeachment is as attributable to the defense as to the prosecution. We conclude that this does not furnish any justification for a determination that the attack on the judgment of conviction is meritorious or that the defense was less at fault in not discovering

it than the prosecution.

## POINT III

The petitioner next argues that as he was being tried for conspiring with Purtle to burn the car, Purtle's subsequent acquittal of participating in the conspiracy is a fact dehors the record which mandates a different result.

■ We find no merit in this argument. Ark. Stat. Ann. § 41-713(2)(c) (Repl. 1977) provides that it is not a defense to a prosecution for conspiracy to commit an offense that the person with whom the defendant is alleged to have conspired has not been charged, prosecuted, convicted, or has been acquitted of an offense based upon the conduct alleged.

## POINT IV

At both trials, Homer Alexander testified that a few days before the fire he was with petitioner when he purchased seven containers of charcoal lighter fluid at a local hardware store at a price of $1.99 each. He stated that the purchase was made with cash. At petitioner's trial, the manager of that store testified for the defense that the cash register tapes for that date did not show that any sales of seven items at $1.99 had been recorded in the department where charcoal lighter fluid is sold. He admitted that the sales might have been rung up in some other department. Apparently in some other department the tapes did show such a transaction. In closing argument, the prosecutor held the register tapes in his hand but merely alluded to the witness's testimony.

■ In the subsequent trial, the same manager testified that he had made further inquiry since his testimony in petitioner's trial and discovered that the seven items had in fact been paid for by check rather than cash as Alexander testified. A check payable to the store in that amount was exhibited showing that it had been issued by a third party in payment for "building materials." Petitioner argues in his motion that the prosecutor misstated the evidence to petitioner's jury either "knowingly or by gross negligence." Nothing in the portions of the trial records submitted to us supports that allegation. According to the store manager, the rather conclusive evidence, that the tape entry referred to in petitioner's trial had nothing to do with petitioner,

was discovered by him *after* petitioner's trial. It was at best newly discovered evidence of a defense witness which does not form the basis for a writ of error *coram nobis*. Also, the issue of whether Alexander was with petitioner when he purchased seven quarts of charcoal lighter fluid was squarely before the trial court. *Coram nobis* does not lie to review or to contradict an adjudicated issue. *Gross* v. *State, supra.*

We cannot conclude that the allegation that these discrepancies in the evidence presented at the separate trials were known to the prosecutor and knowingly and fraudulently withheld on discovery is anything more than a conclusion drawn by petitioner. The supporting documents to his petition do not establish the probability of the truth of those assertions. Nor can we conclude that the attack on the judgment of conviction is meritorious. The petition is denied.

Denied.