Luther SHAMLIN *v.* STATE of Arkansas

CA CR 86-166 743 S.W.2d 1

Court of Appeals of Arkansas
Division II
Opinion delivered January 6, 1988
[Supplemental Opinion on Denial of Rehearing
February 10, 1988.]

40

42

44

*John Wesley Hall, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. A jury found appellant, Luther Shamlin, guilty of arson and conspiracy to commit theft by deception. The State charged that Shamlin conspired with Judge John Purtle and Linda Nooner to burn Purtle's 1980 Ford

Thunderbird and Nooner's home in Little Rock in order to collect the insurance proceeds. The State also charged that Shamlin committed arson by burning Nooner's home at Malcolm Cove in Little Rock on May 5, 1985. Appellant's case was severed and he was tried separately. The trial court sentenced him to 15 years for arson and 10 years for conspiracy, and ran the sentences consecutively.

On appeal Shamlin raises 12 points for reversal. Jurisdiction is in this court under Arkansas Supreme Court Rule 29(1). We affirm.

There was evidence presented at trial that Luther Shamlin and Judge Purtle had been close friends for many years. Ms. Nooner was both Judge Purtle's secretary and his personal friend. She had also known Shamlin for a number of years. There was evidence that Nooner was in financial difficulty early in 1985, and was unable to make her monthly house payments.

The State's primary witness was Homer Alexander. Alexander said that he had been with Shamlin a day or two before the fire when they bought seven quarts of lighter fluid at a Handy Dan store. Alexander testified that on the night before the fire at Malcolm Cove, he helped Shamlin move furniture out of Nooner's house to Shamlin's house in Shannon Hills. He said that he helped Shamlin move "junk" furniture from a storage building behind Shamlin's house into Nooner's house on Malcolm Cove. He testified that Shamlin told him he was planning on burning Nooner's house, but that he did not believe him. Alexander also testified that on the date after the fire Shamlin called him and said he had burned the house. Later that day appellant told Alexander that he had agreed with Nooner and Purtle to burn the house in exchange for $2,500.00 and the furniture.

At trial appellant argued that Homer Alexander's testimony was not credible, and the argument is repeated here. Appellant points out that Alexander is married to his ex-wife, Maxine, with whom Shamlin was engaged in an ongoing custody dispute. Appellant also points out various discrepancies between Alexander's testimony and the testimony of other witnesses. While these matters surely bear on Alexander's credibility, the credibility of witnesses and the resolution of conflicts in the evidence are matters for the jury to determine. *Wilson* v. *State*,

277 Ark. 43, 639 S.W.2d 45 (1982); AMCI 104.

Specific items of furniture reported by Nooner as lost in the fire were later found safe in Shamlin's house. The appellant's son, Bradley, testified that Ms. Nooner told his father to move the furniture out at night. Some of the furniture partly destroyed by the fire at Malcolm Cove belonged to a Mrs. Mullinax, who had had it stored in a small building behind Shamlin's house in Shannon Hills.

There was evidence that, when some of the furniture was moved, Shamlin received an envelope containing money from Linda Nooner. A bank employee testified about a $1,000.00 check on Ms. Nooner's account, payable to Shamlin. Tape recordings, made by Shamlin, were introduced which contained conversations between Shamlin and Purtle, and Shamlin and Nooner, about the Malcolm Cove fire and its subsequent investigation. Gary Jones, an inspector with the Little Rock Fire Department, testified that, in his opinion, the house at Malcolm Cove had been purposely set on fire with an accelerant. Another fire inspector, Lane Kinder, testified that an inflammable liquid was found in a can in the house at Malcolm Cove. Tommy Evans, a volunteer fireman, testified for the defense that he examined both Judge Purtle's car and Ms. Nooner's home and that both fires were caused by electrical problems.

The State presented evidence that Judge Purtle's 1980 Ford Thunderbird burned on April 26, nine days before the house at Malcolm Cove burned. The named insured was Freida Holiday, who lived with Ms. Nooner. Judge Purtle reported to the insurance company that Mr. Shamlin was driving the car on the night it burned to investigate some type of electrical problem in the dash. Police officers found the car abandoned and burned on the side of the road. Richard Walls, a fire investigator, testified that the vehicle was purposely set on fire.

## SEARCH AND SEIZURE ARGUMENTS

Based primarily on the sworn recorded testimony of Homer Alexander, a search warrant was issued authorizing the search of Shamlin's home for tape recordings of telephone conversations between the alleged co-conspirators and for specific items of furniture reported lost in the fire at Nooner's house. Tapes and

some items of furniture were found. At a hearing on appellant's motion to suppress this evidence, Monty Vickers, a Little Rock police officer, testified that he had been involved in the search. He said that the officers had been in the house for about five minutes when the appellant drove up. Appellant was advised of his rights and given a copy of the search warrant. Vickers testified that he told Shamlin that they were going to search his house thoroughly for tapes. The appellant said he had some tapes in the living room but that he also had some tapes out in his truck that he wanted the officers to hear. According to Vickers, appellant said, "I'll go get them for you." Vickers asked the appellant to wait and wrote out a consent to search form. He testified that although appellant refused to sign the form, he insisted on going out to his truck and getting the tapes, which he handed to Vickers. The testimony of Lewis Jackson, another police officer, was essentially the same.

Alexander testified that Shamlin had told him that he had gotten a tape of him (Shamlin), Linda Nooner, and Judge Purtle talking about the fire. Alexander said Shamlin told him that he sent the tape to Judge Purtle. Alexander testified that "he did not tell me that he kept a copy. I just assumed he would keep a copy."

The trial court held that Alexander's assumption that Shamlin would keep a copy of the tape was not enough to justify the search of Shamlin's house for tapes, but that the search warrant was valid as to the furniture. The tapes found in Shamlin's house were suppressed. The court also held that Shamlin freely and voluntarily consented to a search of his truck.

Appellant argues that the tapes which he retrieved from his truck and gave to the police must be suppressed as "fruit of the poisonous tree" and that his consent was invalid under *Bumper* v. *North Carolina*, 391 U.S. 543 (1968). In *Bumper* the defendant lived with his grandmother, a 66-year-old widow, in an isolated rural area. The officers arrived at the door and announced that they had a search warrant. The grandmother responded "go ahead." Incriminating evidence was found, but the search warrant was later held to be invalid. The United States Supreme Court held that the search could not be justified on the basis of consent. The Court said:

> When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of

proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.

When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.

391 U.S. at 548-50.

In *Byars* v. *State*, 259 Ark. 158, 533 S.W.2d 175 (1976), the Arkansas Supreme Court distinguished *Bumper*. The court said:

We think the key statement is, "This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority," *i.e.*, we do not take *Bumper* to mean that an accused can never be deemed to have consented to a search, if a search warrant had been obtained and the accused was aware of that fact. Rather, we consider that this question is determined by the particular facts present when the consent is purportedly given.

259 Ark. at 167, 533 S.W.2d at 180.

■ There are a number of differences between *Bumper* and the case at bar. Here, the court found that the warrant was valid, in part, and therefore the initial intrusion into Shamlin's home was lawful. According to testimony at the suppression hearing, appellant was told that the officers had no warrant to search his truck. The testimony also indicates that appellant's subsequent insistence that the officers take the tapes and listen to them was more than mere passive acquiescence.

■ The burden rests upon the state to prove that consent is freely and voluntarily given. *Rodriquez* v. *State*, 262 Ark. 659,

559 S.W.2d 925 (1978). On appeal we make an independent determination considering the totality of the circumstances. *Smith* v. *State*, 265 Ark. 104, 576 S.W.2d 957 (1979). Our standard of review is whether the trial court's decision was clearly erroneous. *Pollard* v. *State*, 264 Ark. 753, 574 S.W.2d 656 (1978). In this case we cannot say that it was.

■■ Nor do we think the trial court was required to exclude the tapes obtained under the "fruit of the poisonous tree" doctrine. The concept originated in *Wong Sun* v. *United States*, 371 U.S. 471 (1963). This doctrine requires the exclusion from evidence of both the direct and indirect products of an unlawful search. *Walton* v. *State*, 245 Ark. 84, 431 S.W.2d 462 (1968), *cert. denied, Fuller* v. *Arkansas*, 396 U.S. 930 (1969). Here the search for furniture was lawful—the search for tapes in Shamlin's house was unlawful. Appellant's insistence that the officers take the tapes, despite their advice that they had no warrant to search his truck "purges" this evidence of any taint of illegality arising from the partial invalidity of the search warrant. *See Walton*, 245 Ark. at 92, 431 S.W.2d at 467.

■ Appellant contends that the trial court was required to suppress the furniture taken from appellant's house, citing *Franks* v. *Delaware*, 438 U.S. 154 (1978). *Franks* held that if a defendant shows that statements contained in an affidavit for a search warrant are deliberately false or made with reckless disregard for the truth, then those statements should be stricken from the affidavit. If the remainder of the affidavit is insufficient to establish probable cause, the warrant is invalid and the property obtained in the search must be suppressed.

■ As required by *Franks*, the appellant was provided a hearing on the issue. Appellant argued to the trial court, as he does here, that Lane Kinder, a fire marshal, made knowingly false statements about his investigation of the fire. The trial court expressly found otherwise, and that finding of fact is not clearly erroneous. Appellant also argues that because there are some conflicts between Alexander's testimony at the pretrial hearing and evidence which subsequently developed at trial, we must find that Alexander was not telling the truth, invalidate the warrant, and suppress the furniture found in his house. This is not the procedure required by *Franks*.

██ He also argues that the warrant must be declared invalid because of the State's failure to advise the magistrate that Homer Alexander's wife was involved in a custody dispute with the appellant. Appellant cites cases from other jurisdictions which hold that a material omission may invalidate a warrant. If appellant's position on the law is correct (and *Franks* did not so hold), there was substantial evidence presented at the pretrial hearing that the State was unaware of this information. Again, the trial court's ruling was not clearly erroneous.

## MOTIONS FOR DIRECTED VERDICT

██ Appellant argues that the trial court should have granted a directed verdict because there was no proof of an agreement between the alleged co-conspirators. A motion for a directed verdict is a challenge to the sufficiency of the evidence. On appeal, in determining the sufficiency of the evidence, we are obliged to view it in the light most favorable to the State. *Phillips v. State*, 17 Ark. App. 86, 703 S.W.2d 471 (1986). The statute defining conspiracy, Ark. Stat. Ann. § 41-707 (Repl. 1976), provides:

> A person conspires to commit an offense if with the purpose of promoting or facilitating the commission of any criminal offense he: (1) agrees with another person or other persons: (a) that one or more of them will engage in conduct that constitutes that offense; or (b) that he will aid in the planning or commission of that criminal offense; and (2) he or another person with whom he conspires does any overt act in pursuance of the conspiracy.

██ Because the prosecution is seldom able to present direct evidence of the agreement, it is well established that the state may rely on inferences drawn from the course of conduct of the alleged conspirators. *Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939); W. LaFave and A. Scott, Jr., *Criminal Law* § 61, at 461 (1972). Here, Alexander's testimony provided direct proof of an express agreement between the alleged co-conspirators. While it is true that there was no direct evidence of an express agreement as to the alleged ultimate object of the conspiracy, *i.e.*, to commit theft by deception, there was sufficient circumstantial evidence to permit the jury to infer that the

purpose of setting fire to Nooner's home at Malcolm Cove was to collect the insurance proceeds.

Appellant also moved for a directed verdict on the arson count on the basis that Homer Alexander's testimony had not been corroborated. The court denied the motion. When the State's case is based primarily on the testimony of an accomplice, the issue of the sufficiency of the corroborating evidence is frequently one of fact for the jury. *Maynard* v. *State*, 21 Ark. App. 20, 727 S.W.2d 858 (1987); AMCI 402. When the status of a witness as an accomplice presents an issue of fact, that question too should be submitted to the jury. *Jackson* v. *State*, 193 Ark. 776, 102 S.W.2d 546 (1937); AMCI 403. Neither AMCI 402 nor AMCI 403 was requested. Here it appears that whether Alexander was an accomplice was a question of fact. If Alexander was an accomplice as a matter of law, our inquiry is whether there was substantial evidence, apart from Alexander's testimony, tending to connect Shamlin with the commission of the offense. *King* v. *State*, 254 Ark. 509, 494 S.W.2d 476 (1973). The expert testimony that the house at Malcolm Cove had been deliberately burned and the independent evidence about the switching of furniture was sufficient to withstand a motion for directed verdict.

Appellant further argues that the trial court erred in not granting a directed verdict on the arson count because the common law presumption against arson had not been overcome, citing *Boden* v. *State*, 270 Ark. 614, 605 S.W.2d 429 (1980). The court in *Boden* cited *Johnson* v. *State*, 198 Ark. 871, 131 S.W.2d 934 (1939). The facts in *Boden* were quite similar to those in *Johnson*. In each case the defendant was charged with arson and had signed a confession. Each case turned on the rule that a confession, unless made in open court, will not sustain a conviction unless accompanied by proof that such an offense was committed. In neither *Boden* nor *Johnson* was there any testimony that the fire was intentionally set. In each case the only evidence connecting the defendant to the fire was that he was seen in the vicinity of the building that burned. In the case at bar there was evidence that the fire was intentionally set and that appellant was the one who set it. The trial court correctly denied the motion for directed verdict.

Appellant then argues that the court erred in not

granting a directed verdict on "submitting the alleged overt act of the car fire to the jury." As already noted, our conspiracy statute requires proof of an overt act done in pursuance of the conspiracy. Ark. Stat. Ann. § 41-707(2). Ark. Stat. Ann. § 43-2013 (Repl. 1977) provides:

> In trials of indictments for conspiracy, in cases where an overt act is required by law to consummate the offense, no conviction shall be had, unless one or more overt acts be expressly alleged in the indictment, and proved on the trial; but overt acts other than those alleged in the indictment, may be given in evidence on the part of the prosecution.

See also *Guinn* v. *State*, 23 Ark. App. 5, 740 S.W.2d 148 (1987).

We have a number of difficulties with this argument. First, we have been unable to find, in the record, where such a motion for directed verdict was made, although there were a number of motions for mistrial made which related to this issue. Secondly, it was not the "car fire" which was alleged by the State to have been an overt act, but rather the collection of the insurance proceeds on the car. Finally, no objection was made to the court's instruction which told the jury of the State's charge, including the alleged overt acts, nor did appellant offer an instruction omitting any reference to the "car fire," which he now claims the trial court should have given.

### EVIDENCE OF THE CAR FIRE

Appellant argues that the trial court erred in "permitting the State to alternatively pursue the car fire as a prior bad act under A.R.E. 404(b)." That rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

It is true that the State argued that the circumstances surrounding the car fire were relevant under either of two theories: first, that they related to an alleged overt act, and second, that they were admissible under Rule 404(b). We know of

no rule which prohibits a proponent of evidence from advancing more than one theory of admissibility. The trial judge stated that he thought the evidence was admissible under either theory and offered to give a limiting instruction.

The State argues that the evidence was admissible under 404(b), relying in large part on *Casteel* v. *State*, 205 Ark. 82, 167 S.W.2d 634 (1943). The State argues that the theory of the defense was that both fires were accidents and of electrical origin, that there was evidence that both were deliberately set, that there was circumstantial evidence that Shamlin burned the car only a few days before he burned the house at Malcolm Cove, and that insurance proceeds were collected in both cases. Thus, the argument goes, the evidence of Shamlin's relationship to the car fire indicates that the fire at Malcolm Cove was not accidental.

We decline to reach this argument because in our view the evidence was logically relevant to an alleged overt act and was therefore admissible.

In essence, the appellant argues that the inclusion of this particular overt act in the information was merely a ruse to enable the State to offer otherwise inadmissible evidence to the jury. We do not agree. The State's theory obviously was that the burning of the car and the burning of the house were two parts of one conspiracy. While the evidence connecting the two events is circumstantial, it is not so tenuous as to persuade us that the State alleged the overt act of collecting insurance proceeds on the car merely to introduce otherwise inadmissible testimony.

## OBJECTIONS TO THE TESTIMONY OF
## BRADLEY SHAMLIN

Appellant's twelve-year-old son, Bradley, was called as a witness by the State. He testified that he was with his father at Ms. Nooner's house on Malcolm Cove when furniture was being moved out. He also testified that he heard Ms. Nooner say the furniture should be moved out in the nighttime. Appellant made a general objection, which was overruled, and the child completed his direct testimony.

At the next recess, appellant moved for a mistrial on the basis that this was a statement of an alleged co-conspirator

that had not been disclosed to the defense, in violation of A.R.Cr.P. Rule 17.1(a). That rule provides that the prosecuting attorney shall disclose to defense counsel the substance of any oral statements made by a co-defendant.

As best we can tell from the record, the prosecutor learned of this statement during the morning of the day the child testified. The court noted that, according to the child's testimony, the appellant was present when the statement was made, and denied the motion for a mistrial. There was no request for a continuance and no motion to strike.

The State argues that appellant's motion for a mistrial was untimely, but we believe that, under the circumstances, it was timely. We also agree with the appellant that the substance of Ms. Nooner's oral statement should have been disclosed to the defense before Bradley Shamlin testified. It does not follow, however, that the trial court erred in refusing to grant a mistrial. A mistrial is the most extreme recourse available to the court for a violation of discovery and is to be avoided except where the fundamental fairness of the trial itself is at stake. *Snell* v. *State*, 290 Ark. 503, 721 S.W.2d 628 (1986), *cert. denied* ___ U.S. ___, 108 S.Ct. 202 (1987). We have said that, under similar circumstances, the appellant must demonstrate prejudice. *Smith* v. *State*, 10 Ark. App. 390, 664 S.W.2d 505 (1984). The prejudice which must be demonstrated is not that the evidence is bad for the defendant's case, but rather that he has been harmed in some way by the State's failure to disclose it. Here, the appellant was aware that the child would testify and had a copy of the witness statement taken from him by the State. Taking into consideration the nature of the discovery violation, the nature of the testimony considered in the context of the other evidence in the case, and the availability of other sanctions, such as the granting of a continuance, we cannot say the court erred in refusing to grant a mistrial. *See Snell, supra.*

Appellant also argues that the trial court erred in not recognizing a "parent-child privilege" asserted to bar testimony of communications between appellant and his son. Appellant recognizes that such a privilege is not provided for in our rules of evidence but urges us to adopt it, nonetheless. We need not decide, however, whether we should or could adopt such a

privilege as a matter of common law, because none of Bradley Shamlin's testimony related to discussions or communications between his father and him.

## JUROR MISCONDUCT

After the State had rested, two of the prosecutor's secretaries happened to be seated at lunch near three of the jurors. They overheard one, Juror Stewart, tell the others that the State had not proven conspiracy and that the trial was being held for political reasons. They reported the matter to the prosecutor, who in turn reported it to the court. The court held an in camera hearing and heard from both secretaries and all three jurors. Although the testimony of the witnesses varied, Stewart admitted that he had told the other two that the trial "was more political than anything else." One of the other jurors testified that he had cautioned Stewart not to talk about the case. All three jurors said they could fairly decide the case and had not been influenced.

The court excused Juror Stewart and seated the one available alternate juror. The court admonished the other two jurors involved not to discuss the incident.

Appellant argues that the court erred in excusing the juror. In *Capps* v. *State*, 109 Ark. 193, 159 S.W. 193 (1913), the court held that it was always improper for jurors to discuss a case among themselves prior to submission. Here, by his own admission, Juror Stewart had violated the court's repeated admonition not to discuss the case. The trial court has considerable discretion in such matters and we will not disturb its finding absent a manifest abuse of that discretion. *See McFarland* v. *State*, 284 Ark. 533, 684 S.W.2d 233 (1985); *Rice* v. *State*, 216 Ark. 817, 228 S.W.2d 43 (1950). The procedure followed by the trial court here is precisely that which was recommended in *United States* v. *Dean*, 667 F.2d 729 (8th Cir. 1982), *on reh'g* 667 F.2d 729, *cert. denied*, 456 U.S. 1006 (1982). We find no abuse of discretion in the court's excusing Juror Stewart.

Appellant next argues that, if Stewart was to be excused, the trial court was obliged to excuse the other two jurors. This argument is inconsistent with appellant's position on Juror Stewart. It also would have necessitated a mistrial. Based on the in camera hearing, the court could have determined that the other

two jurors had not violated the court's admonition and could remain as impartial jurors. A result identical to that reached by the trial court was approved in *United States* v. *Clapps*, 732 F.2d 1148 (3rd Cir. 1984), *cert. denied* 469 U.S. 1085 (1984). Again, we find no abuse of discretion.

■ Appellant argues that the court should not have admonished the other two jurors not to consider or discuss the in camera proceedings, but the defense agreed to this admonition.

## ARSON AS A LESSER INCLUDED OFFENSE

■■ Appellant next contends that arson is a lesser included offense of conspiracy to commit theft by deception. Arson is defined in Ark. Stat. Ann. § 41-1902 as starting a fire with the purpose of destroying or damaging an occupiable structure that is the property of another person. Ark. Stat. Ann. § 41-105(1)(b) provides that a defendant may not be convicted of both offenses where one offense consists merely of a conspiracy to commit the other. Thus, appellant could not have been convicted both of conspiracy to commit theft by deception and of theft.

■■ In *Thompson* v. *State*, 284 Ark. 403, 682 S.W.2d 742 (1985), the supreme court drew a distinction between "element included offenses" and "lesser included offenses." The court said:

> Element included offenses are defined in Ark. Stat. Ann. § 41-105(1)(a) (Repl. 1977). They arise when one criminal offense, by statutory definition, cannot be committed without the commission of another underlying offense, and, by the language of the statute, although a defendant can be prosecuted for both offenses, a conviction cannot be had for both. . . .
>
> However, an offense is not a lesser included offense solely because a greater offense includes all of the elements of an underlying offense. The lesser included offense doctrine additionally requires that the two crimes be of the same generic class and that the differences between the offenses be based upon the degree of risk or risk of injury to person or property or else upon grades of intent or degrees of culpability.

284 Ark. at 407-408, 682 S.W.2d at 744-45.

The court in *Thompson* held that theft is not a lesser included offense of robbery, because the offenses are of a different nature and are not of the same generic class. 284 Ark. at 408, 682 S.W.2d at 745.

 It is clear that the offenses of arson and conspiracy to commit theft by deception are of a different nature. As the court said in *Thompson*, they are not of the same generic class, and consequently arson is not a lesser offense included within conspiracy to commit theft by deception. It is equally clear that arson is not an "element included offense" of conspiracy to commit theft by deception. The statutory definition of conspiracy does not require proof of arson, and under the specific facts of this case, the jury could have found appellant guilty of conspiracy to commit theft by deception without necessarily finding that he committed arson in the burning of Nooner's house. The fact that one of the overt acts alleged by the State, setting fire to Nooner's house, is equivalent to one of the elements of the offense of arson does not render arson a lesser included, or element included, offense of conspiracy.

## ACQUITTAL OF ALLEGED CO-CONSPIRATOR

 Appellant finally argues that since Judge Purtle was subsequently acquitted of conspiracy, appellant's conviction is a "legal impossibility" and constitutes a denial of due process. We have already answered this argument in *Shamlin v. State*, 19 Ark. App. 165, 718 S.W.2d 462 (1986). We noted that under Ark. Stat. Ann. § 41-713(2)(c) (Repl. 1977) it is not a defense to a prosecution for conspiracy that the person with whom the defendant is alleged to have conspired has been acquitted of an offense based upon the conduct alleged. We held that appellant's argument was without merit. Our holding there has not been affected by the supreme court's recent decision in *Yedrysek v. State*, 293 Ark. 541, 739 S.W.2d 672 (1987), on a related issue. Appellant's contention that the issue is a constitutional one, involving the due process clause, is supported by neither persuasive argument nor convincing authority.

Affirmed.

CRACRAFT and COULSON, JJ., agree.

Supplemental Opinion on Denial of Rehearing
February 10, 1988

744 S.W.2d 405

PER CURIAM. ██ This petition for rehearing is denied because it is merely repetitious of those arguments presented to and decided by the court in its original opinion. Petitions for rehearing are not intended to present arguments which are merely repetitious of those already considered by the court, and such petitions that do so are ordinarily denied without written comment. Ark. R. Sup. Ct. 20(g).

However, we feel compelled to comment on one argument in appellant's petition for an entirely different consideration, i.e., because it is based on matters which we have previously expressly ruled were not, and could not be made, a part of the record in this case. We are troubled by the persistence of counsel in failing to honor our ruling, in pursuing the matter despite that ruling, and particularly in his stated justification for doing so.

Appellant was charged, with Linda Nooner and John I. Purtle, with conspiring to commit theft by deception. They were granted separate trials. The appellant was tried first and convicted, Purtle was then tried and acquitted, and Nooner was subsequently tried and convicted. After Purtle's acquittal, the appellant filed a petition in this court seeking a writ of error *coram nobis*, basing his petition in part on Purtle's acquittal. Attached to that petition was a certified copy of the verdict and

docket sheet in that case. In *Shamlin* v. *State*, 19 Ark. App. 165, 718 S.W.2d 462 (1986), we denied the petition and rejected the argument that Purtle's acquittal mandated reversal. We correctly held that under Ark. Stat. Ann. § 41-713(2)(c) (Repl. 1977) it is not a defense to a prosecution for conspiracy to commit an offense that the person with whom the defendant is alleged to have conspired has not been charged, prosecuted, or convicted, or has been acquitted of an offense based upon the conduct alleged. The supreme court subsequently cited with approval that statute, the rationale for it, and our application of it to the facts in *Shamlin*, holding that the statute applies except in those cases where all alleged co-conspirators are tried jointly and all but one are acquitted. *Yedrysek* v. *State*, 293 Ark. 541, 739 S.W.2d 672 (1987).

At about the same time the appellant filed the petition for a writ of error *coram nobis*, he filed a motion to supplement the record in this appeal by attaching a certified copy of the docket sheet and verdict of acquittal in the Purtle case. We correctly denied that motion because, having not been presented to the trial court, it could not be part of this record and was immaterial to the issues presented here in any event.

Notwithstanding our ruling, counsel argued from that verdict in his brief and reply brief. In a parenthetical attempt to justify his position, he argues that, as a copy of the verdict was attached to both the petition for writ of error *coram nobis* and his motion to make that document a part of the record, the attachment was part of the record despite our ruling that it was not and could not be. This persistence was discussed in our decision conference, along with the possibility of admonishing counsel that this action was looked on with disfavor. However, as the argument was wholly without merit, the court determined to address the issue without admonition.

As this is the fourth time that this court has been called on to address this single issue, we are constrained to now express our displeasure.