## Jack LEAR *v.* STATE of Arkansas

CR 82-110                                              643 S.W.2d 550

Supreme Court of Arkansas
Opinion delivered December 20, 1982

72

*Smith, Stroud, McClerkin, Dunn & Nutter,* by: *Robert S. McGinnis, Jr.,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. A jury convicted the appellant of aggravated robbery (Ark. Stat. Ann. § 41-2102 [Supp. 1981]) and fixed punishment at life imprisonment. For reversal, the appellant, through court appointed counsel, first argues that all four of the principal witnesses against him, Tommy Lear, Jerry Lear, Brenda Taylor and Bobby Goleman, were accomplices as a matter of law, and that the other evidence was insufficient to corroborate their testimony as required by Ark. Stat. Ann. § 43-2116 (Repl. 1977). We disagree.

The appellant's nephews, Tommy Lear and Jerry Lear, took money, at gunpoint, from the Commercial National Bank at Fouke, Arkansas. They pled guilty to aggravated robbery before appellant's trial at which they were state witnesses. Jerry Lear testified that the appellant had planned the robbery three or four days before, enlisting his and Tommy's aid, with the understanding they would receive $1,000 each. The appellant was to receive the balance of the robbery proceeds. Tommy Lear first testified that he and Jerry were to get $1,000 each, but he did not know where the rest was supposed to go because the appellant was not much involved in the robbery. Later, he admitted telling police that the appellant had hired him and Jerry for $1,000 to commit the robbery, and he was afraid to tell the whole truth at trial because of the danger of reprisal. The other principal

witnesses against the appellant are Brenda Taylor and Bobby Goleman. The state concedes that the Lears, appellant's nephews, are accomplices as a matter of law but contends that Taylor and Goleman, whose testimony is recited later, are not.

The trial court instructed the jury in the language of the statute on the definition of an accomplice and the necessity of corroboration. Ark. Stat. Ann. § 41-303 (1) defines accomplice:

A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:
(a) solicits, advises, encourages or coerces the other person to commit it; or
(b) aids, agrees to aid, or attempts to aid the other person in planning or committing it; or
(c) having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

Ark. Stat. Ann. § 43-2116 (Repl. 1977) provides:

A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof.

In *Cate* v. *State,* 270 Ark. 972, 606 S.W.2d 764 (1980), we stated that the defendant in a criminal case has the burden of proving that a witness is an accomplice whose testimony must be corroborated; whether a witness is an accomplice is usually a mixed question of fact and law; and the finding of the jury as to whether a witness is an accomplice is binding unless the evidence shows conclusively that the witness was an accomplice. As stated in *Wilson & Dancy* v. *State,* 261 Ark. 820, 552 S.W.2d 223 (1977), "[m]ere presence, or negative acquiescence and passive failure to disclose the crime are

neither separately nor collectively sufficient to make one an accomplice." Further, we reiterated: "The knowledge that a crime is being or is about to be committed cannot be said to constitute one an accomplice. Nor can the concealment of knowledge, or the mere failure to inform the offices of the law when one has learned of the commission of a crime."

Taylor, who was also charged with aggravated robbery, testified that she was in appellant's car when he followed his nephews to Fouke, Arkansas. She was aware of the plans to rob the bank. They drove toward a rendezvous point outside Fouke, where the nephews were to leave appellant's share of the money. Following the robbery, they followed the Lears for about two miles until a police car appeared and then "we cut off." Taylor denied any complicity or active participation other than the knowledge of the planned offense. Appellant argues that Taylor had a legal duty to make a proper effort to prevent the offense, about which she had knowledge, which she failed to do.

Goleman, 18 years of age, testified that he was present when plans were discussed by the appellant for the robbery. The appellant asked him to drive the automobile during the robbery, which he refused to do. Appellant offered him one-fourth of the total robbery proceeds and the remainder was to be split between the appellant and his two nephews. However, he did not think the Lears were serious about the robbery and did not notify the police. It is undisputed he declined any participation in the offense. He was not an accomplice as a matter of law. *Wilson & Dancy* v. *State, supra.*

As we recently stated in *Walker* v. *State,* 277 Ark. 137, 639 S.W.2d 742 (1982), corroborating evidence is sufficient if, independently of the testimony of the accomplice, it tends in some degree to connect the defendant with the commission of the crime. Here, the testimony of Goleman connected the appellant with the commission of the crime and sufficiently corroborated the essential point that the appellant actively participated in the bank robbery. This being true, we need not discuss whether Taylor was an accomplice as a matter of law.

The appellant next contends that the trial court erred by admitting into evidence a Rand McNally road atlas and two boxes of .22 shells, which were found in appellant's car when he was arrested a few hours following the robbery. The atlas was open showing a map of Arkansas and Fouke, Arkansas, was encircled in red ink. The appellant consented to the search. He does not argue that the search was unconstitutional or that the evidence was inadmissible under the rules of evidence. Rather, his sole argument is that sanctions should be applied by prohibiting the evidence because the prosecutor failed to comply with discovery procedures as required by A.R.Cr.P., Rule 17.1, subject to Rule 19.4, which requires the prosecuting attorney to disclose to the defense evidence to be used at trial or acquired from or belonging to appellant.

Rule 19.7 provides in pertinent part:

(a) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or with an order issued pursuant thereto, the court *may* order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as *it deems proper* under the circumstances. (Italics supplied.)

The language of this rule obviously leaves the decision whether to exclude material, which was not disclosed, to the sound discretion of the trial court. Here, the trial court allowed appellant's counsel time to inspect the atlas and .22 shells, which were first produced at trial. A continuance was not requested. Furthermore, the prosecutor stated that his entire case file had been given to appellant's counsel who was advised that he could review at his convenience any evidence held at the Miller County sheriff's office and that his case file indicated such a map existed. He did not have the map in his office. Appellant's counsel replied that it was his understanding from the prosecutor that he had not seen a map and he would have to await the arrival of the arresting

officers from Louisiana because the map was in their custody, if the map existed. Therefore, it appears there was a sufficient disclosure as to the existence of the map and where it was available for inspection if the appellant desired to inspect it before trial. In the circumstances, we find no abuse of the trial court's discretion pursuant to Rule 19.7, *supra.* *Thomerson* v. *State,* 274 Ark. 17, 621 S.W.2d 690 (1981).

Finally, the appellant contends that the verdict of life imprisonment, in light of the evidence, is excessive especially since appellant's nephews only received twenty year sentences each with ten years suspended. In *Kaestel* v. *State,* 274 Ark. 550, 626 S.W.2d 940 (1982), we answered a similar contention by observing: "As to the severity of a sentence, except in capital cases, we do not review the severity of a sentence within the lawful maximum and not affected by error in the trial, that determination having been committed to the jury by the Constitution and statutes." Aggravated robbery is a Class Y felony. Ark. Stat. Ann. § 41-2102 (Supp. 1981). The range of punishment for a Class Y felony is not less than ten (10) years and not more than forty (40) years or life. Ark. Stat. Ann. § 41-901 (1) (a) (Supp. 1981). The sentence here is within the lawful maximum and unaffected by any demonstrated error in the trial so we have no authority to modify it.

Pursuant to the requirements of Ark. Stat. Ann. § 43-2725 (Repl. 1977), Rule 36.24 of the Rules of Criminal Procedure, and Rule 11 (f) of the Rules of the Supreme Court, we have reviewed the record and all objections and find no prejudicial error.

Affirmed.

DUDLEY, J., not participating.