Joe Don JONES *v.* STATE of Arkansas

CA CR 93-78 871 S.W.2d 403

Court of Appeals of Arkansas
Division II
Opinion delivered February 23, 1994

*La Jeana Jones*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Cathy Derden*, Asst. Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. Appellant, Joe Don Jones, appeals from his conviction at a jury trial of criminal conspiracy to commit capital murder, for which he was sentenced to fifteen years in the Arkansas Department of Correction. He contends that the trial court erred in denying his motion for a directed verdict; in denying his motion to suppress; in allowing the State to use a peremptory strike to excuse a black male from the jury; in admitting into evidence a beer can and a sponge; in allowing two expert witnesses to testify about the beer can and sponge; and in

denying appellant's two motions for mistrial. We affirm.

██ We first consider appellant's argument that the trial court erred in denying his motion for a directed verdict of acquittal. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Shamlin* v. *State*, 23 Ark. App. 39, 743 S.W.2d 1 (1988). On appeal, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the State, and will affirm if the finding of guilt is supported by substantial evidence. *Smith* v. *State*, 34 Ark. App. 150, 806 S.W.2d 391 (1991). Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without requiring resort to speculation or conjecture. *Leach* v. *State*, 38 Ark. App. 117, 831 S.W.2d 615 (1992).

Appellant is a former DeQueen, Arkansas, police officer. He resigned in 1991. At the time of his alleged crime, Tim Litchford was a police officer with the same department. Officer Litchford testified that, while they worked together, he and appellant had conversations about the lax security at Lewis Food Center and how easy it would be to kill and rob the owner as he left the store at night. Litchford testified that he received a phone call from appellant on February 8, 1992. According to Litchford, appellant asked him to recall their prior discussions about robbing the Lewis Food Center and stated, "Well, I am fixing to do it." When Litchford asked appellant if he were serious, appellant replied, "You're God-damned right I'm serious." Appellant stated that he had obtained a .22 rifle but needed a scope for it. Litchford agreed to try to find a scope and to meet with appellant the following day. Litchford then reported his conversation with appellant to his police chief, who in turn contacted the Arkansas State Police.

On February 10, 1992, Officer Litchford, wired with a body microphone, went to appellant's apartment. They discussed how the store owner would be killed, how to dispose of the body, and whether the crime should be committed on a week night or a Saturday night. Officer Litchford again agreed to try to find a rifle scope, and appellant agreed to wait at least two days while Litchford sought it. They also discussed how the planned crime was a two-man job, how they would mount the scope on the rifle, how much money they thought they would get, and how they

would have to burn any checks that were taken during the robbery.

On February 12, 1992, Officer Litchford returned to appellant's apartment with a rifle scope. Appellant opened the door, Litchford handed the scope to him, and appellant took it. At that point, appellant and his girlfriend, Donna Bobb, were arrested, and appellant's apartment was searched pursuant to a warrant.

■ A person commits capital murder if, with the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person. Ark. Code Ann. § 5-10-101(a)(4) (Supp. 1991).

A person conspires to commit an offense if with the purpose of promoting or facilitating the commission of any criminal offense:

(1) He agrees with another person or other persons:

(A) That one (1) or more of them will engage in conduct that constitutes that offense; or

(B) That he will aid in the planning or commission of that criminal offense; and

(2) He or another person with whom he conspires does any overt act in pursuance of the conspiracy.

Ark. Code Ann. § 5-3-401 (1987). Under this section, the State was required to prove that there was an agreement by the parties to commit the crime and that one of the conspirators did at least a minimal act in furtherance of that agreement. *Lee* v. *State*, 27 Ark. App. 198, 770 S.W.2d 148 (1989); *Guinn* v. *State*, 23 Ark. App. 5, 740 S.W.2d 148 (1987). It is well settled that a conspiracy may be proved by circumstances and the inferences to be drawn from the course of conduct of the alleged conspirators. *Lee* v. *State, supra*; *Shamlin* v. *State*, 23 Ark. App. 39, 743 S.W.2d 1 (1988). Furthermore, it is not a defense to a prosecution for conspiracy that the person with whom the defendant conspires is immune to prosecution or has feigned agreement. Ark. Code Ann. § 5-3-103(b)(2) (1987); *Guinn* v. *State, supra.*

■ From our review of the record, we cannot conclude

that appellant's conviction for conspiracy to commit capital murder is not supported by substantial evidence. While the agreement between appellant and Officer Litchford may not have been expressly stated in so many words, the substance of their conversation and the inferences to be drawn therefrom were sufficient to demonstrate an agreement between them to kill and rob another person. The fact that Officer Litchford stated on cross-examination that he had no real intention of actually carrying out the murder provides appellant no defense. Ark. Code Ann. § 5-3-103(b)(2) and Commentary thereto; *Guinn* v. *State,* *supra.* And Officer Litchford's procurement of a rifle scope as requested by appellant and appellant's acceptance of it is sufficient proof of an overt act in furtherance of their agreement.

Appellant next contends that the trial court erred in denying his motion to suppress evidence obtained from his apartment during a search pursuant to a warrant. He contends that, because it mistakenly listed his apartment as "4A" instead of "4B," the warrant failed to describe his apartment with sufficient particularity. Under the circumstances of this case, we find no error.

▆▆. The Fourth Amendment to the United States Constitution provides in pertinent part that no search warrants shall issue except those "particularly describing the place to be searched." Likewise, Rule 13.2 of the Arkansas Rules of Criminal Procedure provides that all warrants shall describe with particularity the location and designation of the places to be searched. The requirement of particularity is to avoid the risk of the wrong property being searched or seized. *Watson* v. *State*, 291 Ark. 358, 724 S.W.2d 478 (1987).

> The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.

*Pike* v. *State*, 30 Ark. App. 107, 110, 783 S.W.2d 70, 72 (1990) (quoting *Lyons* v. *Robinson*, 783 F.2d 737 (8th Cir. 1985)). Search warrants should not be subjected to a hypercritical view in deter-

mining whether they meet constitutional requirements, and the sufficiency of the description to permit identification of the premises with certainty by appropriate effort and inquiry must be decided in light of the particular facts and circumstances of each case. *Perez* v. *State*, 249 Ark. 1111, 463 S.W.2d 394 (1971); *Pike* v. *State, supra.*

■ ˙ Here, appellant lived in a building made up of four apartments. The warrant incorrectly showed appellant's apartment as 4A when in fact he lived in apartment 4B. In all other respects, however, the warrant correctly described the place to be searched. It gave detailed directions as to how to get to the building, it correctly described the building, and it stated that the apartment to be searched was that of appellant, Joe Don Jones, and Donna Bobb. Moreover, Officer Litchford both applied for and participated in executing the warrant. He testified that the incorrect apartment number in the warrant was merely a typographical error. He clearly knew appellant and the particular apartment in which appellant lived. The same was true of several of the other police officers involved in executing the warrant, including one who actually lived in another apartment in the same building. Under these circumstances, we conclude that a mistaken search was unlikely and that the incorrect apartment number in the warrant was not a fatal defect. *See Lyons* v. *Robinson*, 783 F.2d 737 (8th Cir. 1985); *Pike* v. *State, supra.*

Appellant, a white male, next argues that the trial court erred in allowing the State to use a peremptory strike to excuse a black male from the jury. We cannot agree.

■ In *Batson* v. *Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court held that the Equal Protection Clause forbids a prosecutor from using peremptory challenges to exclude potential jurors of the defendant's race solely on account of their race. In *Powers* v. *Ohio*, 499 U.S. 400 (1991), the Court held that a criminal defendant has standing to object to race-based peremptory challenges regardless of whether the defendant and the excluded jurors share the same race. The initial burden is on the defendant to establish a prima facie case of unconstitutional discrimination by showing facts and circumstances that give rise to an inference of discriminatory purpose in the exercise of peremptory challenges. If the defendant succeeds in making a

prima facie case, the burden shifts to the State to show that the challenges were not based upon race. If the defendant establishes a prima facie case *and* the State fails to give a satisfactory, racially neutral explanation for the exclusion, the court must then conduct a "sensitive inquiry" into the matter. *Franklin* v. *State*, 314 Ark. 329, 863 S.W.2d 268 (1993); *Hollamon* v. *State*, 312 Ark. 48, 846 S.W.2d 663 (1993). On appeal, we will not reverse a trial court's findings regarding the sufficiency of the prosecutor's explanation unless those findings are clearly against the preponderance of the evidence. *Colbert* v. *State*, 304 Ark. 250, 801 S.W.2d 643 (1990); *Kidd* v. *State*, 24 Ark. App. 55, 748 S.W.2d 38 (1988).

In this case, we cannot conclude that the trial court erred in denying appellant's *Batson* motion. Clearly, the burden was upon appellant to establish a prima facie case of purposeful discrimination. On appeal, the burden is on an appellant to bring up a record sufficient to demonstrate error. *Irvin* v. *State*, 28 Ark. App. 6, 771 S.W.2d 26 (1989). The abstract is the record on appeal. *Id.* Here, the parties' abstracts show that the State moved to excuse potential juror Ernest Greenlee, a black man, by a peremptory strike. When appellant objected under *Batson*, one of the prosecuting attorneys stated that he had represented Mr. Greenlee in the past, that there had been "friction" between them at times during that relationship, and that on one occasion Mr. Greenlee had even become "accusatory" of the prosecuting attorney. The trial court ruled that, while the explanation would not support a strike for cause, it was racially neutral and sufficient to support a peremptory strike. Neither party's abstract shows whether there were other blacks in the jury pool, whether there was a pattern of strikes against blacks, whether any black jurors were seated, or that there was any racially-based questioning during voir dire. *See Wainwright* v. *State*, 302 Ark. 371, 790 S.W.2d 420 (1990); *Givens* v. *State*, 42 Ark. App. 173, 856 S.W.2d 33 (1993). Nor is there any indication of racial overtones associated with either the crime or the trial. *See Franklin* v. *State, supra.*

From our review of this record, we cannot conclude that appellant established a prima facie case. However, even assuming that he did, the State offered a racially neutral explanation for the strike of Mr. Greenlee, and we cannot conclude that the trial court clearly erred in finding that explanation sufficient.

Appellant next contends that the trial court erred in allowing the introduction of State's exhibits 3 and 4, a beer can with a hole in it and a sponge that had been inside the can. It was the State's position that appellant had experimented with using these items as a silencer for his rifle. Appellant contends that the exhibits were inadmissible because: (1) they were discovered as the result of a custodial statement given by appellant's girlfriend, Donna Bobb, after she was arrested without probable cause; (2) Ms. Bobb's statement telling the officers where to find the can and sponge was hearsay and not within any exception to the hearsay rule; and (3) without any evidence linking the two items to appellant, they were simply irrelevant.

■ The fact that Ms. Bobb's arrest may have been without probable cause, standing alone, would not serve to prohibit use of her custodial statement, or evidence discovered as a result thereof, against appellant. Fourth Amendment rights are personal, and appellant cannot vicariously assert the Fourth Amendment rights of Ms. Bobb. *Burkhardt* v. *State*, 301 Ark. 543, 785 S.W.2d 460 (1990); *Gass* v. *State*, 17 Ark. App. 176, 706 S.W.2d 397 (1986).

■ We agree with appellant that a statement or a confession offered against the accused in a criminal case, made by a codefendant or other person implicating both herself and the accused, is not within the "statement against interest" exception to the hearsay rule. Ark. R. Evid. 804(b)(3). However, appellant's argument based on that rule is unavailing. The trial court excluded any evidence of Ms. Bobb's statement implicating appellant. The witness through whom the exhibits were introduced stated only that Ms. Bobb described the items and showed the police where the items could be found. No "statement" by Ms. Bobb was offered by the State to prove "the truth of the matter asserted therein." Therefore, there was no violation of the hearsay rule. *See* Ark. R. Evid. 801(c).

■ We do not address appellant's argument that the exhibits were irrelevant. Appellant first objected to introduction of the exhibits prior to trial. He made the two arguments discussed immediately above and also argued that, without Ms. Bobb's statement to link the items to appellant, the exhibits would be irrelevant. The court reserved ruling on the relevancy objection at that

time and instructed him to make his objection "as it comes up." When the evidence was subsequently referred to and offered for admission, appellant restated his first two arguments. However, the abstract fails to disclose that appellant either restated or obtained a ruling on his relevancy objection. Under the circumstances, we conclude that appellant has failed to preserve the issue for appeal. *See Vickers* v. *State*, 313 Ark. 64, 852 S.W.2d 787 (1993); *Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990).

Appellant also argues that the trial court erred in allowing two employees of the Arkansas State Crime Laboratory to testify about the beer can and the sponge. Lisa Sakevicius, a criminalist, testified that the beer can contained pieces of sponge and that a gun had been fired through the can and sponge at contact range. Berwin Monroe, a firearms expert, testified as to his experience with silencers and explained how the can and sponge could be used as a silencer to lessen the sound of a gunshot. Appellant argues that, because it was error to allow the can and sponge to be introduced, "it follows that it was also error to allow expert testimony regarding those objects." We find no error.

First, we find no objection by appellant to the testimony of either Ms. Sakevicius or Mr. Monroe, and we need not address his argument. During Monroe's testimony, appellant did state his understanding of the court's prior ruling regarding introduction of the exhibits, and the court corrected appellant's misunderstanding by restating its prior ruling. However, such a comment or statement by appellant did not constitute an objection to the testimony. *See Boone* v. *State*, 282 Ark. 274, 668 S.W.2d 17 (1984).

Nevertheless, there is no merit in appellant's contention. All but one of appellant's arguments on this point were decided adversely to him in our discussion regarding the issue of introduction of the exhibits. We need not repeat that discussion here. The one additional argument made under this point is that the probative value of the testimony was substantially outweighed by the possibility of prejudice. *See* Ark. R. Evid. 403. However, that argument was not made below and will not be addressed on appeal. *Segerstrom* v. *State*, 301 Ark. 314, 783

S.W.2d 847 (1990); *Skiver* v. *State*, 37 Ark. App. 146, 826 S.W.2d 309 (1992).

 Appellant finally contends that the trial court erred in denying his two motions for mistrial made during the testimony of DeQueen Police Chief Jim Smith. In explaining how the police came into possession of the beer can, sponge, and a plastic Diet Coke bottle, Chief Smith stated that Ms. Bobb "told us where they were" and "showed us where to find them." Appellant's motion for mistrial, alleging violation of the court's order prohibiting proof of Ms. Bobb's statements implicating appellant, was denied. Chief Smith later testified, "The investigation early on had revealed that [appellant] experimented with manufactured silencers." Appellant again moved for a mistrial, contending that Chief Smith's "investigation" in this sense could only have referred to Ms. Bobb's excluded statements. Again, appellant's motion was denied.

A mistrial is a drastic remedy and should be granted only upon the occurrence of an error so prejudicial that justice cannot be served by continuing the trial. *Pickens* v. *State*, 301 Ark. 244, 783 S.W.2d 341 (1990). The trial court is in a superior position to determine the possibility of prejudice, and its decision will not be reversed in the absence of a manifest abuse of discretion. *Haynes* v. *State*, 311 Ark. 651, 846 S.W.2d 179 (1993).

 Clearly, there was no error in denying appellant's first motion. As we have already said, appellant cannot vicariously assert Ms. Bobb's Fourth Amendment rights, proof that Ms. Bobb told and showed the police where to find the items includes no hearsay, and Chief Smith's statement was not violative of the court's earlier order. In response to appellant's second motion, the prosecutor stated that the source for the testimony about appellant's experimentation was the audio tape of Officer Litchford's conversation with appellant. That tape, made before Ms. Bobb's statement and before discovery of the alleged silencers, included appellant expressing his concern over the noise that a gunshot would cause, followed by Officer Litchford's question to appellant, "Well, what about what you were talking about with the cans?" From our review, we cannot conclude that Chief Smith's testimony was referring to Ms. Bobb's state-

40

ment. However, even if the testimony should not have been admitted, we cannot conclude that the trial court abused its discretion in finding that this isolated statement did not warrant the drastic remedy of a mistrial.

Affirmed.

COOPER and MAYFIELD, JJ., agree.