Deborah Broadway HUTCHESON *v.*
STATE of Arkansas

CA CR 04-1034 213 S.W.3d 25

Court of Appeals of Arkansas
Opinion delivered September 14, 2005

[Rehearing denied October 26, 2005.]

308

310

*Dustin D. Dyer*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Deborah Broadway Hutcheson was charged as an accomplice for two counts of rape and one count of second-degree sexual assault for acts committed against her daughter, A.M.H. A Saline County jury found Hutcheson guilty of all three counts and recommended a sentence of twenty-five years for each of the rape convictions and ten years on the second-degree sexual assault conviction. The jury also recommended that the sentences be consecutive. The trial judge accepted the jury's recommendations, and Hutcheson was sentenced to a total of sixty years' imprisonment. On appeal, Hutcheson argues that the trial court erred (1) in denying her motions for directed verdict because there is insufficient evidence to establish accomplice liability; (2) in overruling her objections during voir dire and allowing the State to improperly commit the jury to a position on factual situations; (3) in ruling that her co-defendant's statements made to the investigating officer were admissible as an exception to the hearsay rule; and (4) in instructing the jury on accomplice liability by instructing the jury that she had a legal duty to prevent criminal acts of sexual abuse as set out in Ark. Code Ann. § 9-27-303(35) (Supp. 2003). We find no merit to these arguments, and we affirm.

Hutcheson is the mother of two children: A.M.H., the victim in this case, and Michael Hutcheson. Sometime in 1995, Hutcheson permitted Kenneth Ragan to live with her and her two children. For two years, Ragan sexually assaulted A.M.H., who was then eight or nine years old. Although A.M.H. reported the abuse to Hutcheson, Hutcheson did nothing, and no action was taken until A.M.H. reported the rapes to her school counselor. School officials reported the abuse to the Department of Human Services, and DHS opined that Hutcheson had been wrong in failing to report the abuse of her child. Charges were filed against Ragan, and he was convicted and incarcerated for the crimes committed against A.M.H. and another child.

Shortly thereafter, Hutcheson permitted Gary Anderson and his mother, Maxine Anderson, to live with her family. Anderson also sexually assaulted A.M.H., then ten years old, for a period of approximately five years. Hutcheson again turned a deaf ear to her daughter's complaints, opting instead to take A.M.H. to the doctor to get birth-control pills. After Hutcheson refused to help her, A.M.H. again reported the abuse to her school officials, and another DHS investigation was initiated. When Hutcheson learned that DHS had been contacted, she took A.M.H. and Michael and fled from Garland County to Benton, in Saline County. Although Anderson had been jailed for the sexual-assault allegations, upon his release, Hutcheson permitted him to move back with her family in Benton. Each time A.M.H. told Hutcheson about the assaults, Hutcheson instructed her not to tell anyone about what had happened.

When A.M.H. reported an incident of rape by use of a bottle to Hutcheson, Hutcheson refused to listen to A.M.H. and refused to seek medical attention for the child even though A.M.H. reported to her mother that she was bleeding and in pain. When Maxine Anderson witnessed Gary Anderson raping A.M.H., she reported the incident to Hutcheson, and A.M.H. asked Hutcheson to repair the door to her bedroom so that she could keep Anderson out. Hutcheson refused, and she did not call the police or seek medical attention for her A.M.H.

Approximately two months following the bottle incident, Anderson went to jail, and Hutcheson permitted Ragan to move back in with her and her children. Even though Ragan had already been convicted of molesting A.M.H. and was classified as a level-three-sex offender, Hutcheson allowed him to keep some of his belongings in A.M.H.'s room and sleep there on a few occasions. When asked why she permitted Ragan to sleep in A.M.H.'s room over her protests, Hutcheson responded, "Because really I didn't care." While living with the Hutchesons, Ragan was employed delivering newspapers. On at least four occasions, Hutcheson forced A.M.H. to accompany Ragan on his paper route from Benton to Hot Springs even though A.M.H. stated that she did not want to go, and the route lasted from 10:30 p.m. until 5:00 a.m. and A.M.H. had to awake for school at 7:00 a.m. During the drive from Benton to Hot Springs, Ragan molested A.M.H., then age fifteen, and on at least one occasion he pulled over and raped her. These incidents were also reported to Hutcheson, who again did nothing.

Following Ragan's arrest, Hutcheson gave a taped statement, in which she admitted that she was jealous of her daughter; that she did nothing when her daughter reported that Anderson and Ragan were assaulting her; that she did not care that A.M.H. was being assaulted because she was jealous of her; that she refused to confront her daughter's assailants because she feared that they would leave; and that she needed Ragan and Anderson for transportation and income. During the statement, Hutcheson also admitted that she used A.M.H. to keep men around the house and to keep income coming in. Hutcheson was tried and convicted in the Saline County Circuit Court on April 1, 2004, and this appeal ensued.

For her first point on appeal, Hutcheson argues that the trial court erred in denying her motions for directed verdict because there is insufficient evidence establishing accomplice liability. For her fourth point on appeal Hutcheson argues that the trial court erred in instructing the jury on accomplice liability by instructing them that she had a legal duty to protect A.M.H. from criminal sexual acts as set out in Arkansas Code Annotated § 9-27-303(35) (Supp. 2003). Because these two points are related, we have discussed them together.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Lowry v. State*, 90 Ark. App. 333, 205 S.W.3d 830 (2005). On appeal from the denial of a motion for directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Circumstantial evidence may provide the basis for support of the appellant's conviction, but it must be consistent with the appellant's guilt and inconsistent with any other reasonable conclusion. *Nelson v. State*, 84 Ark. App. 373, 141 S.W.3d 900 (2004). Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Lowery, supra.* This court considers only the evidence supporting the guilty verdict, and the evidence is viewed in the light most favorable to the State. *Id.* Determinations of credibility are left to the jury. *Nelson, supra.*

A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he solicits, advises,

encourages, or coerces the other person to commit it; or aids, agrees to aid, or attempts to aid the other person in planning or committing the offense; or having a legal duty to prevent the commission of the offense, fails to make proper effort to do so. Ark. Code Ann. § 5-2-403(a)(1)-(3) (Repl. 1997). Factors relevant in determining whether a person is an accomplice include the presence of the accused near the crime, the accused's opportunity to commit the crime, and association with a person involved in the crime in a manner suggestive of joint participation. *Releford v. State*, 59 Ark. App. 136, 954 S.W.2d 295 (1997). Typically, mere presence or negative acquiescence and passive failure to disclose a crime are neither separately nor collectively sufficient to make one an accomplice. *Lear v. State*, 278 Ark. 70, 643 S.W.2d 550 (1982). Further, knowledge that a crime is being or is about to be committed usually cannot be said to establish accomplice liability; nor can the concealment of knowledge, or the mere failure to inform the officers of the law when one has learned of the commission of a crime. *Id.* In short, *absent a legal duty*, presence, acquiescence, silence, knowledge, or failure to inform an officer of the law is not sufficient to make one an accomplice. *Scherrer v. State*, 294 Ark. 227, 742 S.W.2d 877 (1988).

In this case, Hutcheson was convicted as an accomplice of two counts of rape and one count of second-degree sexual assault.[1] On appeal, she argues that the trial court's ruling is erroneous because the State did not show that she aided, or agreed to aid, attempt to aid, solicit, advise, or encourage Anderson or Ragan in their acts against her daughter. Relying on *Scherrer, supra,* Hutcheson first points out that mere presence at the scene of a crime does not make her an accomplice and further asserts that

---

[1] A person commits rape if she engages in sexual intercourse or deviate sexual activity with another person: by forcible compulsion; or who is incapable or consent because he or she is physically helpless, mentally defective, or mentally incapacitated; or who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(1)(A)-(C) (Supp. 2003). A person commits sexual assault in the second degree if the person: engages in sexual contact with another person by forcible compulsion; engages in sexual contact with another person who is incapable of consent because the person is physically helpless, mentally defective, mentally incapacitated; being eighteen years of age or older engages in sexual contact with another person, not the person's spouse, who is less than fourteen years of age. Ark. Code Ann. § 5-14-125 (Supp. 2003).

neither her knowledge that the crimes had been committed, nor her concealment of knowledge makes her an accomplice. We disagree.

In *Scherrer, supra,* the appellant was found guilty of first-degree murder for the rape and murder of Debbie Watts. Terry Harrison, the appellant's accomplice, and Billy Ivey were the principal witnesses at the trial. *Id.* Their testimony essentially established that the appellant raped Watts, cut her throat, and then put her body in a nearby canal. *Id.* The supreme court held that the evidence showed that Harrison was clearly an accomplice but that Ivey was not. *Id.* The evidence established that Ivey was present at the scene, witnessed the crime, and failed to notify the police, but did not participate. *Id.* The jury found that Ivey was not an accomplice, and the supreme court affirmed. *Id.*

■ The proposition set out in *Scherrer, supra,* is correct: mere presence or knowledge, or failure to act, does not make one who, without a legal duty to do so, an accomplice. However, that is not the circumstance in the case at bar, and the *Scherrer* holding is not applicable to this case. Hutcheson, as A.M.H.'s parent, had a legal duty to protect A.M.H. from Ragan and Anderson, and her silence, knowledge, concealment, and failure to inform law enforcement officers of the sexual assaults committed against her daughter makes her an accomplice to those assaults. An accomplice is someone who has a legal duty to prevent the commission of an offense and fails to make a proper effort to do so. As the supreme court stated in *Burnett v. State,* 287 Ark. 158, 697 S.W.2d 95 (1985) (overruled on other grounds), each parent has a duty to prevent injury to their child. Accomplice liability for permitting child abuse has also been upheld in *Williams v. State,* 267 Ark. 527, 593 S.W.2d 8 (1980). The supreme court held that the evidence sufficiently established that the appellant committed first-degree battery upon her ten-month-old daughter. *Id.* The court noted that the man with whom the appellant lived was abusing the child; that there was no doubt that the appellant could not have been around the child without knowing of the injuries; and that our courts no longer make a distinction between the principal and accessory. *Id; see also Burnett, supra* (stating that the evidence of abuse was overwhelming; that the evidence shows that both parents could not have been ignorant of the abuse; and that each parent had a duty to prevent injury to the child).

■ Here, Hutcheson had a legal duty to protect A.M.H. from Ragan and Anderson. There is no doubt that Hutcheson was aware that the two men were raping her daughter at various times when the girl was between eight or nine and fifteen years of age. Hutcheson admitted that A.M.H. told her of the assaults and, at one time, requested that a lock be put on her door. Maxine Anderson told Hutcheson that she observed her son engaging in sexual intercourse with A.M.H., and A.M.H. verified her allegation. Despite the fact that Ragan had served time for sexual assault upon A.M.H., Hutcheson allowed him to move in with them and forced A.M.H. to accompany him on an overnight paper route. Hutcheson admitted that she moved from one county to another to evade DHS's investigation after being told that she had been wrong in failing to report the sexual abuse of her daughter. Because Hutcheson had a legal duty to protect A.M.H. when she became aware of the offenses being committed against her daughter, and because she concealed her knowledge and failed to act, she is an accomplice to those offenses committed by Ragan and Anderson. *Burnett, supra; Williams, supra.*

Likewise, we find that it was not error for the trial court to give the jury an instruction regarding parental duty to protect children from abuse. Hutcheson argues that the trial court abused its discretion by instructing the jury concerning Hutcheson's legal duty to protect her child from abuse, by permitting the State to modify the model jury instruction on accomplice liability. Relying on Ark. Code Ann. § 9-27-303 (Supp. 2003), the jury was instructed:

> A parent has a legal duty to prevent the abuse of her child when the parent knows or has reasonable cause to know the child is or has been abused. A parent has a legal duty to take reasonable action to protect her child from abandonment, abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness where the existence of this condition was known or should have been known. A parent has a legal duty to appropriately supervise her child and prevent the child from being left alone at an inappropriate age or in inappropriate circumstances which put the child in danger.

Hutcheson essentially argues that this jury instruction extends accomplice liability and allows courts to criminally punish on the basis of "bad parenting."

██ An AMCI instruction is to be used unless the trial judge finds that it does not accurately state the law. *Love v. State*, 281 Ark. 379, 664 S.W.2d 457 (1984). If there is no instruction on a subject upon which the judge determines the jury should be instructed, an appropriate instruction can be given. *Id*. Because the AMCI instruction did not contain a definition of parental duty, and because the jury should have been instructed regarding Hutcheson's legal duty to protect her child, the trial court did not abuse its discretion in permitting the modified instruction.

██ Lastly, under this point, Hutcheson argues that the trial court's admission of an order terminating her parental rights to A.M.H. was so prejudicial that it denied her due process of the law because the jury was bound to find that she had violated her legal duty to A.M.H. because a court had already made that determination. The termination order was admitted into evidence without objection, and Hutcheson cannot now complain on appeal. *London v. State*, 345 Ark. 313, 125 S.W.3d 813 (2003).

For her second point on appeal, Hutcheson argues that the trial court improperly permitted the State to ask inappropriate questions during voir dire in an attempt to get each juror to commit to a vote of guilty based on similar fact patterns before the jury had heard evidence in the instant case. During voir dire, the prosecutor asked the jury several questions relating to parental duty. For example, the prosecutor asked a juror whether a mother should be held accountable if something happened to her baby while she was passed out after taking methamphetamine. The juror responded in the affirmative. The prosecutor also asked whether the jurors agreed that teachers have a duty to protect children while they are in their custody and whether the jurors agreed that our society has established laws to protect children because they cannot protect themselves. The jury agreed.

██ The purposes of voir dire examination are to discover if there is any basis for challenges for cause and to gain knowledge for the intelligent exercise of peremptory challenges. *Nutt v. State*, 312 Ark. 247, 848 S.W.2d 427 (1993). Those purposes do not include an attempt to commit the jurors to a decision in advance. *Id*. "Prospective jurors may not be questioned with respect to a hypothetical set of facts expected to be proved at trial and thus commit the jury to a decision in advance, but . . . they may be questioned . . . about their mental attitude toward certain types of evidence, such as circumstantial evidence." *Id*.; *see also*

*Haynes v. State*, 270 Ark. 685, 66 S.W.2d 563 (1980) (holding that it was improper to excuse a juror for cause where she commented during voir dire that she was unaware of whether she would be able to impose the maximum sentence without hearing all of the evidence). The conduct of voir dire is left to the broad discretion of the trial court. *Sharp v. State*, 90 Ark. App. 81, 204 S.W.3d 68 (2005). Unless the trial court's discretion is clearly abused, it will not be reversed. *Sanders v. State*, 278 Ark. 420, 646 S.W.2d 14 (1983).

▮▮▮ It appears that the State was merely posing questions to the jury in an effort to establish that the jury pool understood the concept of parental duty, a key issue in the instant case. The questions posed by the prosecution thus were a permissible use of voir dire examination. Because the trial court is given broad discretion over the conduct of voir dire, we affirm. Moreover, Hutcheson never requested an admonition or mistrial, and she, therefore, cannot demonstrate prejudice. *Sanders, supra*.

For her third point on appeal, Hutcheson argues that the trial court erred in admitting statements that Ragan, her co-defendant, made to Randy Gibbins, the investigating detective. During the trial, Gibbins testified that he investigated A.M.H.'s allegations that Ragan had sexually assaulted her during the paper-route trips from Benton to Hot Springs. During his investigation, Gibbins spoke with Ragan regarding the allegations, and a statement was taken. Over Hutcheson's objection, Gibbins testified that he showed Ragan a map and that Ragan showed him where the specific acts had taken place in Saline County. Gibbins also testified that Ragan admitted that he had raped A.M.H. in Saline County. Hutcheson also objected to this testimony, and the trial court allowed the testimony pursuant to the statement–against–interest exception to the hearsay rule.

▮▮▮ Admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Taylor v. State*, 88 Ark. App. 269, 197 S.W.3d 31 (2004). Our appellate courts will not reverse a trial court's ruling on a hearsay question unless the appellant can demonstrate an abuse of discretion. *Id.* " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c) (2005); *Taylor, supra*. Hearsay testimony is gener-

ally inadmissible. Ark. R. Evid. 802 (2005); *Taylor, supra.* Rule 804(b)(3) (2005) allows for the admission of a statement made by an unavailable[2] declarant, which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, that a reasonable man in his position would not have made the statement unless he believed it to be true. Notwithstanding that exception, the last sentence of Rule 804(b)(3) provides that a statement or confession offered against the accused in a criminal case, made by a co-defendant or other person implicating *both* himself and the accused, is not within the statement-against-interest exception to the hearsay rule. Ark. R. Evid. 804(b)(3); *Jones v. State*, 45 Ark. App. 28, 871 S.W.2d 403 (1994) (holding that the trial court did not err in admitting the witness's testimony where the court excluded any evidence of the declarant's statement implicating the appellant, and where no "statement" was offered to prove the truth of the matter asserted); *Burkett v. State*, 40 Ark. App. 150, 842 S.W.2d 857 (1992) (reversing and remanding the case for new trial where the trial court admitted the appellant's girlfriend's statement at his trial for possession of a controlled substance and her statement was offered against the appellant, implicated them both, and therefore did not fall within the statement-against-interest exception to the hearsay rule).

 Hutcheson's reliance on *Jones v. State, supra*, for her assertion that a statement or confession by a co-defendant or other person implicating himself is not within the statement-against-interest exception to the hearsay rule, is misguided. Both *Jones, supra*, and *Burkett, supra*, make it clear that the last sentence of Rule 804(b)(3) requires that the declarant's statement be offered against the accused and implicate both the declarant *and* the accused to take it outside the exception. In *Jones, supra*, the court noted that the trial court excluded any evidence implicating the appellant, and found that the appellant's reliance on Rule 804(b)(3)'s final sentence was thus unavailing. Similarly, Ragan's statement that he

---

[2] Ark. R. Evid. 804(a) (2005). We note that it does not appear that the trial court found that Ragan was unavailable at Hutcheson's trial. However, she did not object to the State's reliance on Rule 804(b)(3), which requires that the declarant be unavailable.

raped A.M.H. in Saline County did not implicate Hutcheson, and her reliance on the last sentence of Rule 804(b)(3) and the *Jones* holding is likewise unavailing.

Affirmed.

BIRD and BAKER, JJ., agree.