Cite as 2019 Ark. App. 385

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-18-956

| | |
|---|---|
| VICTORIA ANN DYCUS<br><div align="right">APPELLANT</div><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | **Opinion Delivered** September 18, 2019<br><br>APPEAL FROM THE STONE COUNTY CIRCUIT COURT [NO. 69CR-16-138]<br><br>HONORABLE TIM WEAVER, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Victoria Ann Dycus appeals her conviction for first-degree murder in the death of her four-year-old daughter, Skylar Shellstrom. On appeal, she argues that there was no substantial evidence that she either struck the child herself or that she was liable as an accomplice to her boyfriend, James Hagen Glenn. After having previously ordered rebriefing, we now reach the merits of the case and affirm appellant's conviction.

Skylar was brought to the emergency room on the evening of November 19, 2016, where she died shortly after arriving. The emergency room doctor notified law enforcement that he suspected she died from internal bleeding as the result of trauma and that she had a significant amount of bruising consistent with child abuse. The autopsy revealed that Skylar died from blunt-force abdominal injuries that resulted in peritonitis due to duodenal rupture. Dr. Stephen Erickson, the deputy chief medical examiner at the state crime lab, testified that Skylar had been struck in the stomach and that her duodenum was

nearly transected in half.[1]  He  testified that she had been struck hours, not days, before she died and noted that she would have thrown up any food or drink ingested after the blow. In addition to this fatal blow, Dr. Erickson said that there was evidence of scarring and other signs of the body's healing response that showed Skylar had been struck in the stomach before.  He said that the blow may have been a punch, a kick, an elbow, or a knee to the stomach.

Dr. Erickson testified that Skylar had been the victim of chronic child abuse as evidenced by a multitude of aging bruises as well as burns, puncture wounds, and other injuries.  He said that the number, location, and severity of the bruises indicated child abuse; they were not bruises a child might normally sustain.  These included linear deep bruises across Skylar's buttocks and multiple bruises on the back of her legs and her elbows.  She had bruises on both ears indicating that she had been struck or grabbed as well as bruises on her scalp, on her forehead, around her eyes, on her forearm, and on her labia.  The tops of Skylar's feet had significant bruises, and the bottoms of her feet had multiple puncture wounds—twenty on one foot and ten on the other.  Dr. Erickson said that some of the puncture wounds were older than others and that a sharp object had been pushed into her skin enough to cause some bleeding.  He said that the force used to cause her injuries would have caused pain and likely crying from a four-year-old child.  Skylar also had burn marks on her nose that Dr. Erickson said would have left a disfiguring scar.  He said that she would have reacted and should have been seen by a doctor for the burns.  Skylar also had a serious

---

[1]Dr. Erickson did not perform the autopsy but testified that he had observed the case, reviewed everything, and agreed with the autopsy report.

injury to her mouth that Dr. Erickson said was characteristic of what happens when someone punches a child in the mouth or shoves something into a child's mouth. This strike resulted in a large laceration of the upper part of Skylar's lip and had destroyed the frenulum. Dr. Erickson said that her lip would have bled a lot and been bruised and that any reasonable person would have understood she was injured and needed attention.

Investigator Dennis Simons interviewed appellant on the night Skylar died. Appellant told him that Skylar had been sick off and on for the past week and had been throwing up, which she thought was caused from drinking too much soda. She denied that anyone had hurt Skylar and claimed that Skylar had been hitting herself hard enough to leave bruises on her belly and legs. Appellant told Simons that the burns on Skylar's nose were caused when Glenn was blow drying her hair, and Skylar got mad and jerked the blow dryer down onto her nose. Appellant said that she did not witness this happen but Glenn told her about it. Glenn had also told her that a bruise on Skylar's head was caused by the shower curtain falling on her.

Simons interviewed appellant again when she was arrested in December 2016, and appellant still denied that anyone had hurt Skylar. Glenn was charged with first-degree murder at the same time. A week later, appellant requested to speak with Simons again. She told Simons that Skylar had initially really liked Glenn, but for the last week or two before her death she did not want anything to do with him. Appellant said that while Skylar was taking a bath one day, she told appellant that Glenn had hit her four times, but Skylar later recanted when Glenn questioned her. Appellant said that she did not see Skylar's injuries because Glenn did everything for Skylar.

3

Appellant testified that on November 19, Glenn left their home at 6:30 a.m. to go hunting. He came back around 9:00 a.m. and watched Skylar while appellant took a shower. Glenn left again, leaving appellant home alone with Skylar, until he returned briefly around 2:30 and then again around 5:30. Appellant said that Skylar watched movies all day and had oatmeal, juice, and chips but threw up the juice. Appellant said that when Glenn returned home that evening, Skylar told him that she was feeling better, but shortly thereafter she slid out of a chair onto the floor and was unresponsive.

Appellant claimed that she was unaware of most of the bruises and marks on Skylar because Glenn took care of her and Skylar usually bathed and dressed herself. She said that Skylar never complained about being hurt, she never saw Skylar bleeding, and she never saw Glenn strike her. Appellant said that on November 9, Skylar went to the store with Glenn and defecated in her pants. Appellant then gave her a bath, and Skylar told her that Glenn had hit her "really hard" four times in the stomach. When appellant told Glenn, he asked Skylar when this happened, and she said it happened that day. Appellant testified that he questioned her again after her bath, however, and she said it did not happen. Appellant said that the blow-dryer incident also occurred on November 9 and that she was in the bedroom while Glenn and Skylar were in the bathroom. She said that Skylar did not scream, but she heard Glenn tell Skylar to "go show your mom." Appellant said that on November 13, Glenn told her that Skylar had pulled the shower curtain down on herself and pointed out the bruise near her eye. She claimed that on November 16, Skylar told her that Glenn had said he was going to kill Skylar and appellant; appellant asked Glenn and he denied it. Appellant said that Skylar had started biting Glenn and not letting him pick her up and had

4

started hitting herself and defecating in her pants. They gave her cold showers to deal with this, but appellant said that she last bathed Skylar on November 13. Appellant testified that she now believed Glenn had been abusing Skylar.

Appellant's sister, Brandie Lee, testified that she last saw Skylar on November 11. Appellant told her that the bruise above Skylar's eye was caused by her pulling the shower curtain down on herself and that the burn marks on her nose were caused by the blow dryer. Lee testified that she did not believe the blow-dryer story because it did not make sense that a small child would pull something hot down on her face multiple times and hold it there; however, Lee did not suspect that appellant was abusing Skylar. Appellant also told Lee on this date that Skylar had been hitting herself, throwing herself down, and biting Glenn.

Appellant was charged with first-degree murder as defined as knowingly causing the death of a person fourteen years of age or younger. Ark. Code Ann. § 5-10-102(a)(3) (Supp. 2017). The jury was instructed that

> the State does not contend that Victoria A. Dycus acted alone in the commission of the offense of murder in the first degree. A person is criminally responsible for the conduct of another person when he is an accomplice in the commission of an offense. An accomplice is one who directly participates in the commission of an offense or who with the purpose of promoting or facilitating the commission of an offense: solicits, advises, encourages or coerces the other person to commit the offense; or aids, agrees to aid, or attempts to aid the other person in planning or committing the offense; or having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

The jury was also instructed that

> a parent has a legal duty to prevent the abuse of her child when the parent knows or has reasonable cause to know the child is or has been abused. A parent has a legal duty to take reasonable action to protect her child from abandonment, abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness where the existence

5

of this condition was known or should have been known. A parent has a legal duty to appropriately supervise her child and prevent the child from being left alone at an inappropriate age or in inappropriate circumstances which put the child in danger.

Appellant was found guilty and sentenced to nineteen years' imprisonment.

On appeal from the denial of a motion for directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Hutcheson v. State*, 92 Ark. App. 307, 213 S.W.3d 25 (2005). Circumstantial evidence may provide the basis for support of the appellant's conviction, but it must be consistent with the appellant's guilt and inconsistent with any other reasonable conclusion. *Id.* Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* This court considers only the evidence supporting the guilty verdict, and the evidence is viewed in the light most favorable to the State. *Id.* Determinations of credibility are left to the jury. *Id.*

Appellant argues that there was no direct evidence that she struck Skylar or was present and aided Glenn when he did so. She also claims that the State failed to exclude the possibility of an accidental injury or that Skylar's older brother caused the injury. Dr. Erickson was asked on cross-examination whether Skylar's seven-year-old brother could have caused the injury by landing on her with his knee while jumping on the trampoline. Dr. Erickson said that although he had never seen that in twenty-five years, he could not rule it out; however, he noted that Skylar had a chronic injury to her belly—she had been struck before—so it would have had to have happened on two or three occasions on the trampoline. Furthermore, according to the testimony of both appellant and Brandie Lee,

6

Skylar's brother had not been home with Skylar for more than twenty-four hours before her death and thus could not have inflicted an injury that was survivable for only a few hours. They testified that the brother got off the school bus at his grandmother's house on November 18 and spent the night and all day on November 19 at Lee's house.

Contrary to appellant's arguments, evidence that she struck the fatal blow or aided or assisted Glenn is not required to support her conviction. As the jury was instructed, an accomplice includes someone who has a legal duty to prevent the commission of an offense and fails to make a proper effort to do so. *Hutcheson*, *supra*. In *Boone v. State*, 282 Ark. 274, 668 S.W.2d 17 (1984), the appellant was convicted of the murder of her four-year-old son, although her boyfriend was the one alleged to have beaten the child. The medical examiner testified that he made a diagnosis of "battered child syndrome" and established the cause of death to be a blow to the abdomen. The supreme court held that the evidence supported a conclusion that Boone stood by and repeatedly exposed her son to beatings, which resulted in his death. The court held that she had the duty to prevent such abuse, and there was no doubt that she could not have been around the child without knowledge of such abuse.

Here, the jury viewed autopsy photographs and heard testimony describing the numerous bruises and other injuries covering Skylar's body. Appellant claimed to have never seen or known about most of these injuries even though she admittedly bathed Skylar six days before her death and spent her entire last day with her. Although appellant initially denied that Glenn had hurt Skylar, she testified at trial that Skylar had told her that Glenn had hit her in the stomach and threatened to kill her. A jury may consider and give weight to any false and improbable statements made by an accused in explaining suspicious

7

circumstances.  *Payne v. State*, 21 Ark. App. 243, 247, 731 S.W.2d 235, 236 (1987).  The question whether circumstantial evidence excludes every other reasonable hypothesis other than guilt is usually reserved for the jury.  *Deviney v. State*, 14 Ark. App. 70, 685 S.W.2d 179 (1985).  The jury could have concluded without resorting to speculation or conjecture that appellant knew or had reasonable cause to know of the abuse and failed to make a proper effort to prevent it, thus making her guilty as an accomplice.  Viewing the evidence in the light most favorable to the State, we hold that sufficient evidence supports the conviction.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Mark Alan Jesse*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Chris R. Warthen*, Ass't Att'y Gen., for appellee.